## OLSEN et al. v. BANK OF EPHRAIM
### (RASMUSON et al., Interveners).

No. 5817.    Decided November 8, 1937.    (73 P. [2d] 78.)

Stanley W. Johnson, of Ephraim, for appellants.

Jensen & Jensen, of Ephraim, for respondent.

LARSON, Justice.

Respondent and interveners have filed a petition for a rehearing, setting out several grounds which have all been considered. It is now urged that since the propery, when first acquired by the Olsens from Stevens, was mortgaged to the Bank of Ephraim to secure money borrowed to pay the purchase price, along with some other indebtedness of Olsen, and since the property had never been free of mortgage since that time, the respondent may now assert its mortgage is a purchase-money mortgage and in equity should be paid.

The facts are that, when the Olsens bought the property in 1919, they mortgaged the same to the respondent bank to secure money borrowed from the bank to pay Stevens the purchase price and also to secure other indebtedness owing by Olsen to the bank in the total sum of $9,500. In 1923, Olsen borrowed from the North Sanpete Bank at Mt. Pleasant a certain sum of money with which he paid all his debts to the Bank of Ephraim, and the bank released and canceled the aforesaid mortgage as paid in full. Olsen then mortgaged the property to the North Sanpete Bank to secure his debt there. From time to time payments were made, new loans also effected, and the mortgages released and replaced by new mortgages for the amount at the time owing by Olsen. In 1930, Olsen borrowed from respondent Bank of Ephraim a sum of money to pay his then existing in-

debtedness of $6,000 to the North Sanpete Bank and, to secure this loan, mortgaged to the respondent the sheep involved in this action together with other property.

It is now urged that the original purchase price had never been paid in full, and respondent should be permitted to shuttle its claim back and forth between, and through, all these subsequent creditors and mortgagees and claim a subrogation of its present mortgage to the debt represented by its first mortgage paid off and canceled in 1923. But respondent and interveners made no such defense in the action. They asserted no such claim. They raised no such issue. They alleged and relied on the defense that the property really was Olsen's and that legal title only was in the children. They did not claim, allege, or assert that they had a purchase-money mortgage, in law or in equity, or that they were entitled to subrogation, except the right to be subrogated to the claim of Anthon Olsen against the children for moneys expended for their education, care, and maintenance. They made no claim to other subrogation. They relied upon a different and inconsistent defense to that they now seek to employ. They cannot now be heard to urge a defense not set up before the trial court.

It follows that the petition for a rehearing should be, and the same hereby is, denied.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting in part).

The petition for a rehearing states that we inadvertently overlooked the right of Anthon Olsen to a "credit against the claim of the plaintiffs and consequently the right of his bondsmen and the bank claiming under such right." I think it a serious question whether a parent can, without an order of court permitting him to use his children's estate for their care and maintenance, come into court after he has performed this parent's duty of care and maintenance for

a period of years and gain recoupment from their estate. But the writer knows of no authority and hopes that he shall never be able to find one which holds that some person who is a creditor of the parent may use a credit it is claimed the parent had against the children in order to retain funds of the children wrongfully delivered to such creditor by the parent. That would be subrogation run wild. The finding of the court, therefore, to the effect that the father, Anthon Olsen, had from the year 1926 been compelled to use all the income from the children's and his own property to support himself and his family, and that it cost him $120 a year from 1926 to 1931 to support, educate, and maintain each of the plaintiff minor children, cannot support a judgment permitting the bank to retain the proceeds of the land and sheep belonging to the minor children and sold to Hansen through the bank.

But it seems to the writer that the petition for rehearing and briefs thereon present one matter which was not considered in the opinion. The only error assigned, as stated in the opinion, was that the conclusions and judgment were not supported by the findings. Also, as stated in the opinion, for the purpose of this assignment the findings must be taken as true. The findings set out probative and ultimate facts showing that title to the land and sheep described in the complaint was, after the probate of the mother's estate, in the children, but subject to a purchase-money mortgage. The opinion, and I think correctly, holds that it must follow from the findings as a conclusion that Anthon Olsen could not deny the legal or equitable title in his wife nor in her successors, the children. Therefore, when Olsen made an agreement that the moneys from the sale of the children's property to be made by him by order of court to Hansen should go to the bank, the bank could not rightfully retain such proceeds, if the money derived from such sale was to pay "Olsen's debt" as it is specified in the opinion. But the findings recite that the mortgage which existed on the land and the sheep for the purchase money for the same was never paid or satisfied

"except as herein stated." That means, when we inspect the findings, that the original mortgage for the purchase price given to the Bank of Ephraim was paid by borrowing from the North Sanpete Bank and that after several renewals, part payments and reborrowings on this land and sheep at that bank, Olsen again returned to the Bank of Ephraim and borrowed on the sheep but not on the land described in the complaint to pay off the North Sanpete Bank. It appears to me that there is some basis for the contention that so much of the mortgage as was originally on the sheep to secure money loaned by the Bank of Ephraim in 1919 should in equity still be considered as being on the sheep in 1931 when the guardian's sale was had, and that, if there was a sale for a fair price, the Bank of Ephraim should be considered in equity in the position of one who has foreclosed its mortgage. So much of the money as went to the Bank of Ephraim from the proceeds of the sale of the sheep to Hansen, it should perhaps be allowed to retain. There appears something inequitable in a result which permits the minor plaintiffs in this case to take free of lien those proceeds of the sale of their sheep which were originally subjected to a purchase-money mortgage, and which in reality was never paid off and so found by the court. Actually, the Bank of Ephraim was paid off by borrowing and mortgaging to the North Sanpete Bank and the latter paid off by again borrowing from the Bank of Ephraim and mortgaging these sheep for that debt to it. But the sheep, through the whole period as far as the children were concerned, were always subjected to a lien originally put on to purchase them. What difference can it make to them whether this loan and lien were shuttled between the Bank of Ephraim and the North Sanpete Bank? In equity it should be viewed as a renewal of the mortgage for the purchase price which was on the sheep when they came to the children and which, in equity, was simply renewed by substituting creditors. If, however, there was money derived from the childrens' land and/or sheep which, if applied to the mortgages on the land and sheep, would

have reduced the mortgage on the sheep to a point below the lowest figure to which it had been paid down, the children should have a credit for such amount.

I think there is therefore some basis for the contention that the findings will support a judgment in favor of defendant bank for the proceeds of the sale of the sheep. The difficulty I find is that there is nothing in the findings from which it can be determined what part of the $1,165 paid for the land and what part was paid for the sheep. The judgment being reversed as the decision specifies, I think it should be reversed, not with instructions to enter judgment in favor of plaintiffs for $932, but to permit evidence to be introduced on this point and for an accounting as to the income from the children's land and sheep over the period from the original mortgage, and appropriate findings from such evidence to be made, judgment to follow the findings.